In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00053-CR
______________________________


MICHAEL DWAYNE THOMAS, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 13,475


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â On January 14, 2004, Michael Dwayne Thomas was convicted by a jury in the 115th
Judicial District Court of Upshur County, Texas, of the offense of evading arrest or
detention with a vehicle. Because of prior felony convictions, Thomas' sentence was
eligible for enhancement. The jury sentenced Thomas to fifteen years' imprisonment and
assessed a fine of $5,000.00. 
Â Â Â Â Â Â Â Â Â Â Thomas filed a notice of appeal pro se January 22, 2004. A motion for new trial,
filed by counsel on Thomas' behalf, was filed January 30, 2004, and denied by the trial
court February 9, 2004.
Â Â Â Â Â Â Â Â Â Â We have been presented with a motion to dismiss Thomas' appeal, signed by both
Thomas and his appellate counsel of record. 
Â Â Â Â Â Â Â Â Â Â We grant Thomas' motion and hereby dismiss this appeal.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â January 11, 2005
Date Decided:Â Â Â Â Â Â Â Â Â January 12, 2005

Do Not Publish



, 2006 Tex. Crim. App. LEXIS 2040, (Tex. Crim. App. Oct. 18, 2006); Clewis
v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

 The jury was charged that a person acts intentionally, or with intent "when it is his
conscious objective or desire to engage in the conduct or cause the result." See Tex.
Penal Code Ann. § 6.03(a) (Vernon 2003).

 Walter Kemp, M.D., a forensic pathologist who performed the autopsy on Corbin's
body, testified that Corbin (although with no skull fractures) had brain hemorrhaging and
bleeding around the optic nerve as the result of head trauma and that Corbin had multiple
rib fractures. Kemp stated that Corbin's injuries were consistent with shaken baby
syndrome and that Corbin died sometime between minutes to six hours after the injuries
were inflicted. Kemp further stated that all the injuries were very recent and were inflicted
at the same time. The head trauma would alone be lethal, and he testified that the
fractured ribs could also cause or contribute to the death. He testified that all the injuries
were consistent with holding the baby under the armpits, shaking him, and putting him
down in a forceful manner on something like a sofa. Kemp emphasized that normal
handling could not cause such a result, nor even accidental drops from a low height--such
injuries require a "significant" amount of force to be applied. 

 There was also testimony that Jessica called a long-time family friend, Christine
Adams, and told her that she had confessed to the murder and that she had killed her
son. (4)

 This evidence is supportive of a conclusion by the jury that it was Jessica's
conscious desire to engage in that conduct. It does not necessarily require the intent to
cause the result: death. It only requires that the action itself be intentionally done. 
Further, the charge also allowed conviction for capital murder if the act was done knowingly
or with knowledge. 

 A person acts knowingly or with knowledge, with respect to the nature of his or her
conduct when that person is aware of the nature of the conduct. A person acts knowingly,
or with knowledge, with respect to a result of his or her conduct when that person is aware
that the conduct is reasonably certain to cause the result. See Tex. Penal Code Ann.
Â§Â 6.03(b) (Vernon 2003). The evidence would also support a conclusion that Jessica acted
knowingly when she took the actions--and there is evidence that those actions resulted
in the child's death. 

 The arguments to the contrary consist of nothing more than speculation and
surmise. There is no evidence to connect Dewayne, or any other person, to the injuries
to the child. The evidence is legally and factually sufficient to support the verdict.

 Jessica next complains that the court erred by denying her motion for continuance
so that she could attempt to obtain additional witnesses. The two witnesses had been
subpoenaed for a prior setting, but no additional subpoenas had been issued for the
instant trial, and the witnesses did not appear. The motion for continuance was made
orally. The Texas Court of Criminal Appeals has held specifically that a motion for
continuance must be made in writing, and must be sworn--otherwise, any complaint is
waived. Dewberry v. State, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999). The contention
has not been preserved for our review.

 We affirm the judgment.




 Donald R. Ross

 Justice


Date Submitted: August 14, 2006

Date Decided: November 21, 2006


Do Not Publish

1. See Tex. Penal Code Ann. Â§ 12.31(a) (Vernon Supp. 2006). 
2. To avoid confusion, we will use first names for those persons with a common last
name.
3. See Tex. Code Crim. Proc. Ann. art. 38.22, Â§ 2 (Vernon 2005).
4. In an odd statement, Adams testified that Jessica called her, crying and very, very
upset, and said, "I wrote a written confession. I said, do what. She said, I wrote a written
confession. I killed Corbin. I said why are you saying that, why did you do that. She told
me that God made her do it and that Dewayne was God. And I didn't want to hear
anymore." Adams further testified that Jessica had Dewayne "wrapped around her finger,"
that Dewayne was not a controlling personality, and that she could make no sense of the
"God" statement at all.